IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHNNY TORRES, individually and on behalf of the class defined herein,<br>　　　　Plaintiff,<br>v.<br>ARROW FINANCIAL SERVICES, LLC,<br>　　　　Defendant. | Case No.: 08 CV 2813<br><br>Judge: Grady<br><br>Magistrate Judge Brown |

## REPLY IN SUPPORT OF MOTION TO DISMISS

Defendant Arrow Financial Services, LLC ("Arrow") by and through its attorneys and for its Reply in Support of its Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule 12(b)(6) states as follows:

### INTRODUCTION

Arrow owns plaintiff's debt and filed suit against him to collect the unpaid balance. Plaintiff alleges that Arrow's claim to the debt is not valid because Arrow did not attach an "assignment for collection" to the lawsuit. Plaintiff claims this practice violates Section 8b of the Illinois Collection Agency Act ("ICAA") and that a violation of the ICAA is also a violation of the Fair Debt Collection Practices Act ("FDCPA") and Illinois Consumer Fraud Act ("ICFA"). However, Arrow's practice of filing the collection suit without attaching an "assignment for collection" did not violate the ICAA, FDCPA or ICFA because the ICAA does not require the owner of a debt, suing in its name, to attach an "assignment for collection" to a collection complaint.

**I.  SINCE SECTION 8B APPLIES TO "ASSIGNMENTS FOR COLLECTION" PLAINTIFF'S ICAA CLAIM FAILS.**

Section 8b unambiguously states that it applies to "assignments for collection." Plaintiff does not dispute that "assignments for collection" are those assignments in which legal title is

transferred but equitable ownership remains with the assignor. *Sprint Communications Co., L.P., et. al. v. APCC Services, Inc., et. al.*, 128 S.Ct. 2531, 2538-39 (2008). In fact, the first five pages of plaintiff's response do not even address the language in Section 8b. Instead, plaintiff spends the first several pages of his brief discussing everything but the language contained in Section 8b. For instance, plaintiff discusses a press release issued by Attorney General Madigan, an article from Collections & Credit Risk, a case out of the Eastern District of Tennessee, the FTC's action against CAMCO and amendments and legislative history to other sections of the ICAA. (Resp., pp.1-5, Appendices A-G). When plaintiff actually does begin to discuss Section 8b (Resp., p.5), plaintiff argues that because the definition of "collection agency" in Section 3 of the ICAA was amended on January 1, 2008 to include debt buyers, this amendment somehow changes the meaning and scope of Section 8b. Plaintiff is incorrect. The fact that a change was made to the definition of "collection agency" in Section 3 does not change the meaning of "assignment for collection" in Section 8b or make that provision applicable to debt buyers.

Plaintiff even disingenuously claims that somehow <u>Arrow</u> "in particular" was responsible for the amendment to Section 3 of the ICAA because the AG filed suit against it in 2007. (Pl's Resp. at p.1). Not only is there no basis for such claim, the Attorney General complaint is completely unrelated to plaintiff's claims and a red herring. (Appendix E). Plaintiff is forced to engage in mudslinging against Arrow "in particular" and the debt buying industry in general because the statutory language of Section 8b does not support his claim.

Illinois law recognizes that with any question of statutory construction, the best place to start is with the language of the statute itself. *Chemetall GmbH v. ZR Energy, Inc.*, 2001 WL 1104604 , *14 (N.D.Ill. 2001). When the language of a statute or rule is unambiguous, the only legitimate function of courts is to enforce the law as written. *People v. Roberts*, 214 Ill.2d 106,

120-21, 824 N.E.2d 250 (Ill. 2005). Yet instead of starting with the language of Section 8b, plaintiff effectively concedes that the language does not support his theory, accusing the Illinois legislature of using "inapt prepositions" when they drafted it. (Resp., p.7). He claims, "[w]hen faced with inapt grammar, punctuation or prepositions, the Court should ascertain the meaning consistent with the legislative intent and apply it." (Resp., p.7). Yet this alleged "inapt" grammar has been in Section 8b since it was last amended on January 1, 1996. For plaintiff's argument to work, this court must disregard language that has been in the statute for more than twelve years. Plaintiff improperly tries to twist the statute to serve his agenda. Contrary to plaintiff's claims, the purpose of Section 8b was not to protect debtors from being sued twice for the same debt, (Pl.'s Resp. at p.5), rather, it provides a vehicle for an assignee who holds legal but not equitable title to a debt to bring suit for collection of the debt. *See Sprint Communications Co., L.P., et. al. v. APCC Services, Inc., et. al.*, 128 S.Ct. 2531 (2008)(discussing history of assignments for collection).

Plaintiff claims that to discern the meaning of Section 8b this court should look at legislative history for an amendment to a different part of the statute. Even if this court looked to the legislative history and Attorney General press release from the January 1, 2008 amendment to Section 3 to interpret the language of Section 8b, these documents do not support plaintiff's interpretation. Moreover, a press release is a dubious source for discerning legislative intent.

Plaintiff emphasizes that the Attorney General was a proponent of the amendment to the definition of "collection agency" to include debt buyers because "it came to the attention of the Attorney General that the fact that debt buyers filed lawsuits alleging ownership of debts was no guarantee that they owned the debts, that the debts were still outstanding, or that they were suing the right person." (Resp., p.5). On the contrary, the press release cited makes clear that the

3

reason for the amendment was to "update Illinois law so it more closely resembles the Federal Fair Debt and Collections Practices Act." (Appendix A to Resp.). The amendment gave the Attorney General's office authority over debt buyers, where none had previously existed. The amendment had nothing to do with the alleged documentation required to be attached to collection complaints when filed by assignees for the creditor but had everything to do with efforts to harmonize Illinois law with the FDCPA.

Moreover, the House Debates demonstrate that the legislature did not have a clear understanding of the debt buying industry, misstating the applicability of the ICAA and FDCPA:

> Franks: "Representative, who would this apply to? Would it just apply to collection agencies or anyone who is a debt collector?"
>
> Colvin: "Anyone who is a debt collector. So, yes, it would apply to those agencies that collect, but it also extends the provisions of this Act to those who so-called buy debt. <u>Those individuals who call people's homes and offer to buy debt</u> at a.. at a.. who buy debt at a reduced rate and then begin to try to collect the debt through…as a pass-through company from the original debtor."
>
> Franks: "<u>Under the Fair Debt Collection Practices Act, attorneys…which is a Federal Act…attorneys have been deemed to be construed as collectors.</u> In this Bill, would attorneys also be deemed to be considered collectors?"
>
> Colvin: "If they're in the act of collecting a debt, indeed, they would be." (Appendix G, emphasis added).

On the contrary, debt buyers do not buy debt from the consumer. In addition, the ICAA explicitly exempts attorneys at 425/2.03(5):

> This Act does not apply to persons whose collection activities are confined to an are directly related to the operation of a business other than that of a collection agency, and specifically does not include the following:
> ***
> 5. Licensed attorneys at law.
>
> ***

Moreover, neither the debates nor the Attorney General's press release say one word about Section 8b or assignments for collection.

4

Plaintiff's tortured reading of the statute becomes obvious in applying plaintiff's reasoning to Section 8a-1. Plaintiff claims that under Section 8a-1, a debt buyer who has obtained the beneficial ownership of a debt still has an obligation to notify the original creditor- an entity who no longer holds any interest in the debt- of its intent to file a lawsuit. Plaintiff reasons that this would somehow protect the consumer because the creditor could notify authorities if it received two notices that two different entities were going to file suit. (Resp., p.7). It is absurd to suggest that a creditor who has sold all rights in a debt has any obligation to track what happens to the debt thereafter or that a debt buyer who has acquired all rights in a debt has any obligation to advise the original creditor of its intent to pursue litigation after the sale.

The language and meaning of Section 8b did not change as a result of the January 1, 2008 amendment. Its still only applies to the circumstance in which legal title is passed to the collection agency to enable the collection agency to file suit for collection <u>as assignee for the creditor.</u> Since plaintiff has not alleged that Arrow was assigned legal title of his debt for purposes of collecting it as assignee for his creditor, Section 8b does not apply to its conduct. Thus the fact that Arrow did not attach an assignment to the collection complaint pursuant to Section 8b of the ICAA does not give rise to liability.

## II. PLAINTIFF IGNORES THE FACT THAT THE ICAA DOES NOT REQUIRE AN ASSIGNMENT TO BE ATTACHED TO A COLLECTION COMPLAINT.

The ICAA contains no requirements about the form a state court collection complaint should take. Plaintiff does not address this. Rather, he chooses to discuss §5/2-606 of the Illinois Code of Civil Procedure and state court decisions that have nothing to do with his Section 8b theory. (Resp., pp.10-11).

5

Plaintiff's Complaint does not reference or allege facts to support a Section 5/2-606 violation. The *Candice v. Ricketts* decision, which discussed Section 5/2-606 in dicta and found a violation of Illinois' Mechanic Lien Act, as defendant's opening brief explains, has no application to the allegations in his Complaint that an assignment has to be attached to a state collection complaint.

Likewise, the *Ramirez* decision is not on point. Plaintiff suggests *Ramirez* is relevant to his Section 8b theory because "…the contract must be attached or quoted (in the collection complaint)…any documents transferring the contract rights to that party are documents on which the action is founded. That is the import of *Candice* and was followed in *Ramirez*." (Resp., p. 11)(citations omitted). This makes no sense. First, *Ramirez* did not involve the ICAA. Second, it did not involve an assignment or an assignment for collection. Third, the *Ramirez* court held that the five year limitations period for unwritten contracts applied to a collection complaint because a written contract signed by both the original creditor and the debtor was not attached to the pleading. *Ramirez v. Palisades Collection, LLC*, 2008 WL 2512679, *5 (N.D.Ill. 2008).[1]

Similarly, plaintiff's argument that defense counsel argued in a brief in another federal jurisdiction that "collecting debts to which one does not have legal title as fraudulent and malicious" is irrelevant here. Nowhere in his Complaint does plaintiff allege Arrow was assigned legal title to his debt in support of his Section 8b theory. (Resp., p. 10 & Appendix J).

Equally as irrelevant is plaintiff's reliance on the *Barnes* and *O.K. Electric* decisions for the proposition that there is a presumption in Illinois that when no assignment is attached to a state court complaint, it is "presumed" that "no document exists." (Resp., p. 11). First, the word "presumption" does not appear anywhere in either cited decision. Second, these cases do not

---

[1] Ramirez's counsel is Torres's counsel.

6

involve the ICAA or assignments and do not hold that in Illinois an assignment is presumed not to exist when it is not attached to a pleading.

In *Barnes v. Peoples Gas Light and Coke Company*, 103 Ill. App.2d 425 (1st Dist. 1969), plaintiff filed suit against the gas company for wrongfully discontinuing his gas service. Defendant moved to strike the complaint claiming that plaintiff failed to plead facts that it owed plaintiff a duty.[2] The court found that plaintiff failed to plead facts sufficient to indicate offer, acceptance and consideration and stated that the complaint did not purport to be based on a written instrument. Basically, plaintiff failed to allege that the parties had a written agreement and the agreement's terms. *Barnes* has nothing to do with any presumption about assignments that are not attached to pleadings or the ICAA and thus has no application to this case.

In *O.K. Electric Co v. Fernandes*, 111 Ill.App.3d 466, 444 N.E.2d 264, 266-67 (2nd Dist. 1982), plaintiff filed a two count complaint against Fernandes for breach of contract for electrical services. Count I alleged that electrical services were performed at various specific locations for which Fernandes agreed to pay specific amounts. Count II made the same allegations, attaching an itemized bill stating that there was an account stated. Defendant claimed that the complaint was insufficient because it failed to allege whether the contract was oral or written and the court found that failure to plead whether a contract was oral or written was not a ground for dismissal and allowed the complaint to stand. Again, this case has nothing to do with assignments or the ICAA.

Plaintiff's alleged Section 8b violation is based on the following facts: "the assignment must be attached to the complaint," "the complaint did not attach any sort of assignment" and "defendant engages in a practice of filing lawsuits without attaching to the complaint an

---

[2] Illinois is a fact-pleading state. *Beahringer v. Page*, 204 Ill.2d 363, 369, 789 N.E.2d 1216, 1221 (2003).

7

assignment." Compl., ¶¶10, 27, 40(a), *see* Resp., p. 11 ("Defendant points to the allegations in Cmplt., ¶26 about <u>no assignments being attached</u>.")(emphasis added). His class is defined as "all individuals …against whom defendant Arrow Financial Services, LLC filed a collection lawsuit…without attaching to the complaint an assignment." Complt., ¶37. However, he completely ignores the fact that the ICAA has no requirements about the form a state court pleading to collect a debt should take.

Section 8b applies to "an assignment for collection" and then lists what information a valid assignment must contain. *See, e.g.* §8b(a)(i), (ii)(assignment must be evidenced by a written agreement with an effective date and consideration paid), §8b(b)(how consideration must be paid), §8b(c)(stating assignment must be voluntary). There is no provision under Section 8b that states an assignment must be attached to anything, much less a state court pleading to collect a debt as plaintiff alleges in his Compliant. Nowhere in the text of the ICAA does it require an assignment be attached to a state court pleading. Absent statutory support for plaintiff's assignment attachment theory (and his class definition), Count I fails and should be dismissed with prejudice.

**III.   PLAINTIFF'S COMPLAINT IMPROPERLY CHALLENGES THE FORM OF A STATE COURT PLEADING.**

Plaintiff's claim that Arrow violated the ICAA is based on his theory that in order to have a valid claim, an assignment that complies with Section 8b must be attached to a collection complaint. Strangely in Section III of his response brief, plaintiff argues that he is not alleging that the *failure to attach the assignment* is actually an ICAA violation but rather the *failure to own the debt* itself is the violation. This Court should not be misled. Plaintiff's complaint and class definition speaks for itself. (Compl., ¶¶10, 27, 37, 40(a)). Plaintiff's response argument

and plaintiff's class definition are not consistent. If plaintiff now wants to change his claim, he needs to change his class definition. Plaintiff cannot have it both ways.

Plaintiff's complaint is premised on the *failure to attach an assignment*. Collection attorneys engaged in "the actual practice of law" are not subject to the ICAA for the manner in which they construct their complaints nor for the documents they do or do not attach to them. *Shalabi v. The Huntington National Bank*, 2001 WL 777055, *2-3 (N.D. Ill.) The legal profession and the rules of pleading are already well regulated and plaintiff should not be allowed to use the ICAA, nor the FDCPA, (See Section V) to reach defendant for alleged pleadings violations.

### IV. THE REASONING OF THE *SHERMAN* AND *KIM* COURTS IN IMPLYING A PRIVATE RIGHT OF ACTION UNDER THE ICAA NO LONGER APPLIES IN LIGHT OF THE JANUARY 1, 2008 AMENDMENT.

Plaintiff's response brief at Section IV correctly notes that several cases prior to January 1, 2008 held that a limited private right of action may be inferred into the ICAA in certain factual circumstances. A review of the reasoning of those courts reveals that none of those reasons remain after the January 1, 2008 amendment. The amendment expanded the ICAA, as plaintiff admits "to afford Illinois consumers greater protections from abusive debt collection practices." (Resp. at p.10).

The reason the courts in *Sherman v. Field Clinic*, 74 Ill. App. 3d 21 (1st Dist. 1979) and *Kim v. Riscuity, Inc.*, 2006 WL 2192121 (N.D. Ill.) held that a private right of action could be inferred into the ICAA is because the conduct alleged in those cases involved harassing collection letters and telephone calls. Plaintiff in this case is not in the same class of individuals as the plaintiffs in *Sherman* and *Kim* and the ICAA is not designed to protect a plaintiff such as

9

the plaintiff in this case, nor is it designed to protect against injuries such as those purportedly alleged in this case.

Most importantly, the courts in *Sherman* and *Kim* seized upon the lack of provisions within the old version of the ICAA to provide for adequate consumer protections from abusive debt collectors. As admitted in point 6, page 9, Section IV of plaintiff's response brief, in "2007, Attorney General Madigan drafted amendments" to provide for "greater protections from abusive debt collection." The reasons cited by the courts in *Sherman* and *Kim* for implying a private right of action no longer exist because the ICAA is now radically different in regard to the remedies that a consumer may seek. A private right of action should no longer be inferred based upon the reasoning of the courts in *Sherman* and *Kim*.

There are no provisions in the ICAA explicitly providing for a private right of action. That private right has only been inferred to exist by pre-amendment courts and for reasons that no longer exist involving circumstances that do not exist in this case. This Court should refuse to infer a private right of action in the ICAA post-January 1, 2008.

## V.　STATE LAW, NOT THE FDCPA, GOVERNS THE CONTENT AND ADEQUACY OF STATE COURT PLEADINGS.

Plaintiff wants to use the FDCPA to (1) regulate the content of collection complaints filed in state court and (2) provide a federal remedy for disputes over the sufficiency of collection complaints filed in state court. (Resp., p. 12-14). The court should not allow this action because the FDCPA does not address the process of state court litigation and does not specify what must be attached to a state court complaint.

Plaintiff tries to avoid the *Beler v. Blatt, et al.*, 480 F.3d 470 (7th Cir. 2007), *Wade v. Regional Credit Ass'n*, 87 F.3d 1098 (9th Cir. 1996) and *Olvera v. Blitt & Gaines*, 431 F.3d 285 (7th Cir. 2005) decisions. He argues that "none of the three supports defendant's argument that

10

filing suit on debts without legal title to them is not an FDCPA violation." (Resp., 12-14). That is not the case.

The theory pled in the Complaint is that defendant violated Section 8b of the ICAA because the "assignment must be attached to the complaint," "the complaint did not attach any sort of assignment" and defendant "engages in a practice of filing lawsuits without attaching to the complaint an assignment." (Compl., ¶¶10, 27, 40(a)). This amounts to an FDCPA claim, according to plaintiff, because Arrow allegedly filed a suit notwithstanding a known defense because it had no assignment. (Compl, ¶¶45, 46). His theory is based on violations of Illinois state pleading requirements, not the FDCPA.

Regardless, the FDCPA does not regulate the contents of Illinois pleadings and *Beler* says so. There the court held that the FDCPA is not an enforcement mechanism for other rules of state and federal law and went so far as to suggest that proceedings in state court are outside the scope of the FDCPA, declining to use the statute as a vehicle to impose new rules on the collection of judgments entered by state courts. *Beler*, 480 F.3d at 472-3. The debtor's Section 1692f claim wherein she argued that this provision of the FDCPA should be read as prohibiting any collection practice that allegedly runs afoul of other laws, such as state and federal rules, was rejected. The court stated:

> §1692f creates its own rules…; <u>it does not so much as hint at being an enforcement mechanism for other rules of state and federal law</u>. This is not a piggyback jurisdiction clause. If the Law Firm violated the Social Security Act, that statute's rules should be applied. Likewise if the Law Firm violated Illinois law. Section 1692f does not take a state-law dispute and move it to federal court, even though the amount in controversy is well under $75,000 and the parties are not of diverse citizenship. *Id.*, at 473-4 (emphasis added).

Thus, the FDCPA should not be seen as a statute that can be used to enforce other laws, like whether a state court complaint violates the ICAA because an assignment was not attached to it. *Wade* 87 F.3d at 1099 ("[W]e must determine not whether RCA violated the state statute,

11

but whether it violated the (FDCPA). We disagree with Wade that debt collection practices in violation of state law are per se violations of the FDCPA."); *Olvera*, 431 F.3d at 287 (claims against debt buyer for charging interest higher than permitted under Illinois statute rejected because, in part, "it makes the federal statute a vehicle for enforcing state law, and why would Congress want to do that?").

To avoid the reality that his Complaint challenges state, not federal law, plaintiff cites several cases omitting facts the court considered in making their rulings. (Resp., p.12). For instance, the issue in *Randolph* was different than the issue in this case. (Resp., p. 12). There, the court decided whether a plaintiff could bring a claim under the FDCPA for an alleged violation of the bankruptcy stay. The court made no findings about the language in the letters before it, much less a collection complaint. Thus, *Randolph*'s dicta about "false" statements does not support plaintiff's position that *Beler* permits false "claims that the contents of a pleading would not be understood by an uneducated person." (Resp., p. 12).

*Gearing* is also inapplicable because it involved a FDCPA claim based on two bad checks plaintiff wrote to Ayerco. *Gearing*, 233 F.3d at 471. The collector hired to collect the debt, sent plaintiff a collection letter which stated it was subrogated to Ayerco's rights, when in fact it was not. *Id*. The lawsuit alleged that this assertion (that it was Ayerco's subrogee) was a false representation under §1692e. *Gearing* does not involve a collection complaint or §1692e claims based on allegedly not complying with state law, much less the ICAA, like this case. For the same reasons *Evory* does not apply either. That case involved an FDCPA claim based on a collection letter, not a state court pleading or state law (ICAA) like this case does. (Resp., p. 12).

Plaintiff also suggests that the FDCPA would be "meaningless" if it "did not apply to litigation conduct." (Resp., p. 13). To support this contention, plaintiff lists FDCPA provisions

12

he believes are "at risk" and cites no supporting case law. (Resp., p. 13). So plaintiff's own say so is the only support he can put forth to shore up this proposition.

Plaintiff cannot use the FDCPA, which polices collection practices that are themselves false or unfair, to impose federal liability against a debt collector who goes to state court to recover a credit card debt without attaching the assignment to the pleading. Thus, his FDCPA claims should be dismissed with prejudice.

### VI. PLAINTIFF'S ICFA CLAIM SHOULD BE DISMISSED.

As argued in defendant's motion, plaintiff's ICFA claim should also be dismissed. ICFA liability must be premised on direct participation in the allegedly deceptive act. Derivative or vicarious liability is not permitted. *Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 720, 733 (N.D. Ill. 2005); *Jackson v. South Holland Dodge, Inc.*, 197 Ill.2d 39 (2001); *Zekman v. Direct Am. Marketers, Inc.*, 182 Ill.2d 359 (1988). Plaintiff here alleges no direct conduct by defendant. Plaintiff does not allege that defendant mailed anything, called anyone, filed anything or drafted any document that allegedly violates any law. All of plaintiff's allegations concern a lawsuit and a pleading drafted and filed by defendant's licensed attorneys and brought in Illinois state court by defendant's licensed attorneys. Under these circumstances, there is no ICFA liability.

ICFA claims must also allege, with particularity and specificity, (1) a deceptive act or practice, (2) intent (3) in the course of trade or commerce, and (4) actual damages (5) proximately caused by the deceptive act. *Villasenor v. American Signature, Inc.*, 2008 WL 904888, *3 citing Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 149 (2002). Plaintiff's Complaint fails on all five elements as follows:(1) Plaintiff has alleged no deceptive act or practice. The "act" in this case is the filing of a collection lawsuit. There is nothing deceptive about that and plaintiff has failed to plead with particularity and specificity that there is, (2) For the same

6353904v1 889319 57536

reasons, plaintiff has failed to plead intent with particularity and specificity. Defendant here retained attorneys to file a lawsuit to collect debt owed to it. Plaintiff does not explain how that demonstrates intent to deceive, (3) Court litigation and the practice of law are not considered "trade or commerce" and the ICFA does not apply to the acts of attorneys. *Shalabi v. The Huntington National Bank*, 2001 WL 777055 (N.D. Ill.); *Cripe v. Leiter*, 184 Ill.2d 185 (1998). Plaintiff has therefore failed to allege, with particularity and specificity, a deceptive act occurring in a course of conduct involving trade or commerce, and (4) Plaintiff has also failed to allege actual damages with particularity and specificity.

### VII. PLAINTIFF FAILS TO ALLEGE ACTUAL DAMAGES.

Plaintiff does not cite to a single allegation in his complaint to support his claim that he has plead actual damages. He cannot because one does not exist. Plaintiff's only allegation relating to actual damages is that because collection complaints were filed, "plaintiff and the members of the class were damaged." (Compl., Plaintiff then states in his response that actual damages are obvious because, "the filing of a collection suit without title to the debt is necessarily injurious." (Resp., at p.15). Actual damages, however, are not obvious- they must be plead. Plaintiff also argues in his response that "the filing of collection lawsuits is regularly picked up and reported by credit bureaus." (Resp. at p.15). Such statements in a response brief are insufficient to plead actual damages.

First, plaintiff makes no allegation in this case that any damage to credit *actually* happened. On this basis alone, the complaint should be dismissed. There is no allegation that plaintiff himself suffered any actual damages.

Second, the pleading filed here establishes plaintiff's alleged injury, if any, was because of defendant's failure to physically attach an assignment to a state court collection complaint.

14

*Supra*, Sections II-III. Plaintiff must allege actual damages that were caused by the violation at issue. The alleged wrongdoing here is an event (filing a complaint without an assignment) in state court litigation. He has not alleged with particularly or specificity how this event actually damaged him, if at all. Nor has he explained how his alleged actual damages are the same as those of the alleged putative class members.

Third, plaintiff argues that he may have sustained actual damages by being required to retain counsel. (Resp., p.15). However, plaintiff does not actually plead this anywhere in his complaint, does not explain why plaintiff had to retain counsel, does not explain who that counsel was nor state what that counsel charged. Defendant is left to speculate whether plaintiff is really claiming such a damage or not. If plaintiff is, the law requires him to have alleged it, with particularity and specificity, in his complaint not in a response brief.

Plaintiff's failure to allege actual damages is fatal to both his ICFA and ICAA claims. *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 751-2 (court not convinced that the ICAA should be interpreted as providing an implied private cause of action but even if it were the ICAA still requires actual damages). For these reasons, both plaintiff's ICFA and ICAA claims should be dismissed.

WHEREFORE, Defendant Arrow Financial Services, LLC respectfully requests this court grant its Motion to Dismiss and dismiss plaintiff's Complaint with prejudice.

                    Respectfully submitted,

                    By:  s/*David M. Schultz*
                          Attorney for Arrow Financial Services, LLC

David M. Schultz
Jennifer W. Weller
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000

## CERTIFICATE OF SERVICE

    I hereby certify that on **August 28, 2008**, I electronically filed the above **REPLY IN SUPPORT OF MOTION TO DISMISS** with the Clerk of the U.S. District Court, using the CM/ECF system reflecting service of to be served on all parties of record.

                                HINSHAW & CULBERTSON, LLP

                                s/*David M. Schultz*
                                Attorney for Arrow Financial Services, LLC

David M. Schultz
Jennifer W. Weller
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000

6353904v1 889319 57536